IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| COUNTY OF DURHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV225 |
| | ) | |
| TIME WARNER ENTERTAINMENT ADVANCE NEWHOUSE PARTNERSHIP, d/b/a Time Warner Cable, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on the motion of Plaintiff County of Durham ("Durham") to remand this action to the North Carolina Superior Court pursuant to 28 U.S.C. § 1447. (Docket No. 19.) Plaintiff contends that the Notice of Removal filed by Defendant Time Warner Entertainment – Advance Newhouse Partnership d/b/a Time Warner Cable ("TWC"), as amended with leave of Court, is defective in that it invokes diversity jurisdiction but fails to adequately allege the citizenship of TWC's partners and members as of the date of removal. Plaintiff Durham further contends that complete diversity of citizenship within the meaning of 28 U.S.C. § 1332 is lacking in this case, and no other ground for removal is present. TWC opposes the motion to remand and maintains that subject-matter jurisdiction is proper in this Court based upon diversity of citizenship and the

amount in controversy. The parties have fully briefed their positions, and the Court heard oral argument on the motion to remand on August 25, 2008.

## THE NATURE OF THE MATTER BEFORE THE COURT

On February 29, 2008, Plaintiff Durham filed a complaint against TWC in the Superior Court of Durham County, North Carolina. Plaintiff seeks injunctive and declaratory relief regarding Durham's access to public educational and governmental use ("PEG") channels under N.C. Gen. Stat. § 66-357, entitled "Availability and use of PEG channels." Durham seeks an additional channel for Durham's exclusive use. As explained by Plaintiff, the gravamen of this action concerns the statutory interpretation of N.C. Gen. Stat. § 66-357, i.e., does the plain language of the statute require that TWC allocate to Durham two PEG channels for its exclusive use, as opposed to merely one, on its basic tier service.

On March 31, 2008, TWC removed the action to this Court based upon diversity of citizenship pursuant to 28 U.S.C. §§ 1332 and 1441.

## DISCUSSION

In initial briefing, Plaintiff Durham contended that this Court should (1) decline jurisdiction based upon *Burford* abstention, (2) grant Durham's motion to remand based upon TWC's defective notice of removal, (3) grant Durham's motion to remand because all parties to this action are not diverse, and (4) grant Durham's motion to remand because the amount in controversy does not exceed seventy-five thousand dollars. In its reply brief, Durham added an argument that the Court should invoke *Colorado River* abstention. In opposition,

Defendant TWC has argued that no abstention is appropriate in this case, and that diversity jurisdiction is properly shown in the amended notice of removal and supporting documents.

TWC is the removing party in this action and therefore has the burden to demonstrate that all grounds for diversity jurisdiction exist and that diversity of citizenship between the parties is complete. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). "Courts have consistently interpreted [28 U.S.C.] § 1332 and its predecessors to require complete diversity such that the state of citizenship of each plaintiff must be different from that of each defendant." *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). Further, "[b]ecause removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* at 151.

Durham's primary jurisdictional argument to the Court is that TWC's Amended Notice of Removal is defective because it does not properly demonstrate the citizenship of TWC for diversity purposes and does not show whether or not diversity existed at the time of removal. Durham argues that diversity is in fact lacking in this case under the information that is now before this Court. Durham contends that jurisdiction is at best doubtful, and remand is proper in view of TWC's unmet burden to establish subject matter jurisdiction.

In view of TWC's allegation that the County of Durham is a "citizen" of North Carolina for purposes of 28 U.S.C. § 1332, diversity of citizenship to support federal

-3-

jurisdiction will be absent if Defendant TWC is also a citizen of North Carolina.[1] The parties have differing understandings of how the state of citizenship, or multiple states of citizenship, of TWC is to be determined. Both parties cite *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980) and *Carden v. Arkoma Associates.*, 494 U.S. 185 (1990) as pertinent authorities on the issue, but they read these cases differently as they may apply to the facts of this case.

The general rule for establishing the citizenship of an unincorporated association, including a partnership like TWC, for purposes of determining diversity is that such an association is deemed to be a citizen of every state of which a member is a citizen, including general and limited partners. *Carden*, 494 U.S. at 195. A partnership may thus be a citizen of many states – as many as are shown to be state of citizenship of the constituent partners. Defendant TWC's amended notice of removal, as supported by the affidavits of Riina Tohvert (Docket Nos. 27 and 37), Corporate Legal Administrator for TWC, shows a complicated business structure for TWC. TWC is a New York General Partnership with three partners: Time Warner Entertainment - Advance Newhouse Partnership Holdco, L.P.; Time Warner NY Cable LLC; and Advance/Newhouse Partnership. For purposes of determining the of citizenship of TWC in this case, the focus rests upon general partner Time

---

[1] Durham argued in its initial brief that it is not a "citizen" of North Carolina for purposes of diversity jurisdiction. It did not elaborate on this argument in its reply brief or in oral argument. For purposes of this opinion, the Court assumes, without deciding, that Durham is a citizen of North Carolina.

Warner NY Cable LLC ("TWNYC"), a limited liability company. The second affidavit of Riina Tohvert avers that partner TWNYC holds a 1.92% interest in Defendant TWC. The "Common Equity Member" of TWNYC is TW NY Cable Holding Inc., a Delaware corporation with a principal place of business in New York. Affiant Tohvert states that

> Four other entities hold preferred equity interests in Time Warner NY Cable LLC: Citibank N.A., a national bank located in New York; DB Investment Partners, Inc., a Delaware corporation with a principal place of business in New York; Hare & Co., the nominee for Bank of New York Mellon Corporation, which is a Delaware Corporation with a principal place of business in New York; and LB I Group, Inc., a Delaware corporation with a principal place of business in New York.

(Docket No. 37, Second Tohvert Aff. ¶ 7.)

The second Tohvert affidavit continues:

Hare & Co. originally held the preferred equity interest for the benefit of Banc of America Securities LLC ("BAS"). Upon information and belief, BAS has a member, Bank of America Securities Holding Corporation that has a principal place of business in North Carolina. Upon information and belief, as of June 25, 2007, Hare & Co. holds the preferred equity interest for the benefit of Blue Ridge Investments, LLC ("Blue Ridge"). Upon information and belief, Blue Ridge's member, Bank of America Corporation, has a principal place of business in North Carolina. Upon information and belief, Time Warner NY Cable LLC did not receive notice of the BAS-Blue Ridge transaction.

(*Id*. ¶ 8.)

The second Tohvert affidavit continues further:

My original affidavit of May 21, 2008, did not state the preferred equity holders of Time Warner NY Cable LLC because they do not participate in the management, control, or day-to-day business operations of Time Warner NY Cable LLC. The rights of the preferred equity holders are limited to receiving

-5-

> a regular dividend and, in the event of liquidation, to receiving a distribution
> of assets sufficient to cover the amount of their capital contributions. For that
> reason, Time Warner Cable treats the rights of these holders as distinct from
> those of the common equity member.

(*Id.* ¶ 9.)

Although it is not Durham's burden in this case to disprove jurisdiction, Durham has contributed to the record with regard to the business structure of TWC and, in particular, general partner TWNYC. Through this contribution, Durham attempts to demonstrate deficiencies in the jurisdictional showing made by TWC in its Amended Notice of Removal. Plaintiff has proffered a Securities and Exchange Commission (SEC) filing of Time Warner Cable, Inc. (Docket No. 35, Ex. A.) A document within that filing is entitled "Amended and Restated Limited Liability Company Agreement of Time Warner NY Cable LLC" (hereinafter, "the Agreement") and is dated July 28, 2006. The Agreement is entered into by TW NY Cable Holding, Inc. ("the Common Equity Member") and the persons listed on the signature pages as "Series A Members." The preamble recites that the Series A Members, together with the Common Equity Member, constitute the "Members" of the organization pursuant to the Limited Liability Company Act of the State of Delaware. Appearing in the Agreement as Series A Members, are Citibank N.A.; DB Investment Partners, Inc.; Hare & Co. for the benefit of Banc of America Securities LLC; and LB I Group Inc.

With this description of the business structure of TWC before it, the Court must determine if TWC has carried its burden to show subject matter jurisdiction in this Court. TWC has shown that it is a general partnership with three partners. Partner TWNYC is a limited liability company. The "Common Equity Member" of TWNYC is TW NY Cable Holding, Inc., and the "Series A Members" include Hare & Co. for the benefit of Banc of America Securities LLC ("BAS"). BAS is a limited liability company that includes as a member Bank of America Securities Holding Corporation, a corporation that has a principal place of business in North Carolina. Apparently, in 2007 the preferred equity interest held by Hare & Co. for the benefit of BAS was transferred by BAS to Blue Ridge, a limited liability company whose member, Bank of America Corporation, has a principal place of business in North Carolina.

In *Carden v. Arkoma Associates*, the Supreme Court reaffirmed the longstanding rule that a federal court's "diversity jurisdiction in a suit by or against [an unincorporated] entity depends on the citizenship of 'all the members.'" 494 U.S. at 195-96. It is now well settled that a limited liability company is "an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004)*; Wise v. Wachovia Secs., LLC*, 450 F.3d 265, 267 (7th Cir.), *cert. denied*, ___ U.S. ___, 127 S. Ct. 582 (2006); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827 (8th Cir. 2004); *see JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*, 127 F. Supp. 2d 700, 701 (D.Md. 2001); *see also Grupo*

*Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 586 n.1 (2004)(Ginsburg, J., dissenting)("Although the Court has never ruled on the issue, Courts of Appeals have held the citizenship of each member of an LLC counts for diversity purposes.").

The critical question in this case reduces to the following: who are the "members" of the limited liability company TWNYC, which itself is one of TWC's general partners, and what are the states of citizenship of the members. More specifically, the question is whether Defendant TWC has carried its burden to demonstrate diversity between Plaintiff and Defendant by affirmatively showing that no member of TWNYC is, or was at the time of removal, a citizen of North Carolina.

The Court must review the business structure of TWC under the dictates of *Carden v. Arkoma Associates*. And the Court must progress through the organizational chart from level to level within the structure to identify all "members" of the unincorporated association in order to determine its citizenship. "A federal court [] needs to know each member's citizenship, and if necessary each member's members' citizenship." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006).

As previously outlined, one of TWC's partners is TWNYC, a limited liability company. One of the members of TWNYC is Hare & Co. *for the benefit* of Banc of America Securities LLC ("BAS"). A federal court must disregard formal parties, as Hare & Co. appears on this record, and rest jurisdiction only upon the real parties in interest to the controversy, BAS in this instance. *See Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 613 (4th

Cir. 2004). BAS itself is a limited liability company, and has as a member Bank of America Securities Holding Corporation ("BASH"), a corporation that has a principal place of business in North Carolina and is therefore a North Carolina citizen. *See* 28 U.S.C. § 1332(c)(1). Apparently, in 2007 the preferred equity interest held by Hare & Co. for the benefit of BAS was transferred by BAS to Blue Ridge, a limited liability company whose member, Bank of America Corporation, has a principal place of business in North Carolina and therefore is also a North Carolina citizen.[2]

Defendant TWC contends that a mechanical approach to determination of its citizenship based upon all entities designated as "members" in the operative documents of the organization distorts the business reality inherent in the structure. TWC does not dispute that TWNYC, a limited liability company, is one of its partners and that the state of citizenship of each of the members of TWNYC therefore becomes a state of citizenship for TWC. It contends, however, that the sole cognizable "member" of TWNYC is its "Common Equity Member," Time Warner NY Cable Holding, Inc., a Delaware corporation with a principal place of business in New York. If TWC is correct in this argument, the chain of "member's members' citizenship" through TWNYC would end with Time Warner NY Cable Holding, Inc., a corporation that has no North Carolina citizenship.

---

[2] This transfer does not affect the Court's analysis of the citizenship of TWC since both BAS and Blue Ridge are North Carolina citizens for diversity purposes.

TWC presents several arguments, some which are appealing at first blush, why the progression of "members" of TWC should stop with Time Warner NY Cable Holding, Inc. That corporation, the Common Equity Member of TWNYC, is vested with all of the management control of TWNYC under the Limited Liability Company Agreement before to the Court. (Docket No. 35, Ex. A, ¶ 3.1.) Series A Members, including Hare & Co. for the benefit of BAS, do not participate in the management or control of the company. (*Id.* ¶ 3.4.) Series A Members are to be treated as holders of non-voting preferred stock for federal income tax purposes. (*Id.* ¶ 8.1.)

TWC argues that since Series A Members of TWNYC exercise no management control over TWNYC, and their rights are generally limited to receiving a regular dividend and a potential liquidation distribution, they do not represent true ownership of the company. TWC argues that "[t]hese [are] debt interests [that] are fully transferable, subject to only a few restrictions." (Docket No. 44, Def.'s Surreply, at 2.)

TWC alternatively argues that even if the Series A Members of TWNYC qualify as members of TWC, the Court should end its search for members of TWNYC at the level of Hare & Co., which holds (or held) its interest in TWNYC "for the benefit" of BAS. TWC does not identify the organizational structure of Hare & Co., but states that it is the nominee, or street name, for Bank of New York Mellon Corporation ("BONY"), a Delaware corporation with a principal place of business in New York. TWC makes no showing regarding the legal relationship between Hare & Co. and BAS; all that appears from the face

of the Agreement is the Hare & Co. holds the interest in question "for the benefit" of BAS. On this record, TWC would have the Court end the chain of "members" of TWNYC at Hare & Co. as nominee for Bank of New York Mellon Corporation, a corporation which has no North Carolina citizenship. Thus, TWC contends that "even if the preferred equity holders [Series A Members] count as members of TWNYC, diversity of citizenship is present." (Def.'s Surreply at 3.)

> Finally, TWC argues that
>
> Plaintiff asks the Court to construct the following chain to overcome the interests of federal diversity jurisdiction: one of [TWC's] partners owns less than 1.92% of [TWC]; that partner, TWNYC, owes a preferred interest – which interest carries with it no right to manage or control the operations of TWNYC – to BONY; BONY holds that interest for the benefit of BAS; and BAS is owned by BASH Corp., which has a principal place of business in North Carolina. Even if the construction of such a chain was appropriate – which, as explained above, it is not – this construction of North Carolina citizenship is far too attenuated to deprive [TWC] of access to the federal courts of North Carolina in light of the strong interests favoring exercise of diversity jurisdiction.

(Def.'s Surreply at 4.)

The Court understands TWC to make essentially a "business reality" argument regarding its complex organizational structure and the states of citizenship that should be recognized. As a part of this argument, TWC seeks to limit citizenship consideration to only those members of the association who exercise management control over day-to-day operations. To TWC, the nomenclature within the Agreement that identifies "Series A Members" as "Members" of TWNYC is to be discounted on the basis of TWC's assertion

-11-

that these members are essentially holders of debt, not equity, and should not be considered to have any ownership interest in TWC.

TWC's argument has been squarely foreclosed by the Supreme Court's decision in *Carden v. Arkoma Associates.* There, the Supreme Court considered whether the citizenship of both the general partner and the limited partners of a limited partnership should be considered in determining the citizenship, for diversity purposes, of the business association. The Court in *Carden* held that the state of citizenship of every limited partner is a state of citizenship for the limited partnership, regardless of the fact that limited partners have no control over the ordinary conduct of business. 494 U.S. at 193. Arkoma Associates, the Arizona limited partnership involved in the litigation, argued that the Court should study the internal organization of the association in question, state law requirements, management structure, and the capacity to act and/or sue in order to determine diversity of citizenship. The Court specifically declined to follow this path, writing that, "[t]he problem with this argument lies not in its logic, but in the fact that the approach it espouses was proposed and specifically rejected in *Bouligny*." *Id.* at 190. In *Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145 (1965), the Court reiterated its holding in *Chapman v. Barney*, 129 U.S. 677 (1889), that all forms of association [except for corporations], regardless of their organization under the laws of any particular state, are treated as "mere partnership[s]." *Id.* at 189. The Court made no searching analysis of who actually exercised operational power or authority within the business structure of the association, and reiterated instead the straightforward principle

-12-

that an unincorporated association is a citizen of every state in which a member of the association is a citizen.

The Supreme Court recognized that it was adhering to a mechanical and technical test for determining the citizenship for business entities other than corporations. It held to its line of precedent despite the fact that, in the business world of today, there are a wide variety of limited liability associations and other structures that are more like corporations than they are like partnerships. The Court wrote at length on this point:

> The resolutions we have reached above can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization. But, as must be evident from our earlier discussion, that has been the character of our jurisprudence in this field after *Letson.* See Currie, The Federal Courts and the American Law Institute, 36 U.Chi.L.Rev. 1, 35 (1968). Arkoma is undoubtedly correct that limited partnerships are functionally similar to "other types of organizations that have access to federal courts," and is perhaps correct that "[c]onsiderations of basic fairness and substance over form require that limited partnerships receive similar treatment." Brief for Respondent 33. Similar arguments were made in *Bouligny.* The District Court there had upheld removal because it could divine "'no common sense reason for treating an unincorporated national labor union differently from a corporation,'" 382 U.S., at 146, 86 S.Ct., at 273, and we recognized that that contention had "considerable merit," *id.,* at 150, 86 S.Ct., at 274. We concluded, however, that "[w]hether unincorporated labor unions ought to be assimilated to the status of corporations for diversity purposes," *id.,* at 153, 86 S.Ct., at 276, is "properly a matter for legislative consideration which cannot adequately or appropriately be dealt with by this Court," *id.,* at 147, 86 S.Ct., at 273. In other words, having entered the field of diversity policy with regard to artificial entities once (and forcefully) in *Letson,* we have left further adjustments to be made by Congress.

*Carden v. Arkoma*, 494 U.S. at 196.

-13-

Congress, of course, has created a special citizenship test for corporations, *see* 28 U.S.C. § 1332(c)(1), but it has not done so for other forms of business organization. For an organization like TWC, which includes both partnerships and limited liability companies within its structure, this Court must therefore carefully apply the technical "*Carden*" test wherein the Court considers the state of citizenship of "all the members" of the organization. 494 U.S. at 195.

In this case, TWC has among its general partners TWNYC, a limited liability company. Hare & Co. for the benefit of BAS is a Series A Member of TWNYC. In the preamble to the Agreement that organizes TWNYC it is specified that "Series A Members," together with the "Common Equity Member," constitute the "Members" of the limited liability company "pursuant to and in accordance with the Limited Liability Company Act of the State of Delaware (6 Del.C. § 18-101 et seq.)." (Docket No. 35, Ex. A.) 6 *Del.C.* § 18-101(11), entitled "Definitions," provides in part: "'Member'" means a person who is admitted to a limited liability company as a member as provided in § 18-301 of this title . . ." As *Carden* emphatically teaches, it is not the province of this Court to analyze the "business reality" of TWC's structure to determine whether Hare & Co. for the benefit of BAS has

-14-

management control over TWNYC or holds an interest that is more like debt than equity.³ To the contrary, Hare & Co. for the benefit of BAS is a "member" of TWNYC by specific and unambiguous terms of the Agreement. Therefore, its state of citizenship becomes a state of citizenship for TWC. The membership is held "for the benefit" of BAS and thus, nothing else appearing, it is the citizenship of BAS that must be considered. BAS is a limited liability company that has as a member a corporation that is a North Carolina citizen. Ultimately, therefore, from all that appears from the record in this case, TWC appears to be a citizen of North Carolina for purposes of diversity jurisdiction.

TWC has argued that *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980) gives this Court leave to consider the citizenship of Hare & Co. as an independent entity, without regard to the citizenship of BAS, for which Hare & Co. holds (or held) the beneficial interest. The Court is aware of no authority on which this argument may be fairly grounded. *Carden* specifically rejected an argument that *Navarro* constituted an exception to "the *Chapman* tradition," i.e., the rule being followed in *Carden*. The Court in *Carden* considered that *Navarro* was not a case that involved the question of the citizenship of an artificial entity other than a corporation. The Court wrote that, "[*Navarro*] . . . did not involve the question

---

³ Even if it were to attempt such an analysis on the basis of the record made by TWC, the Court could not find that the Series A Members of TWNYC are not "members" of TWC's business structure in any sense used by the Supreme Court in *Carden*. Counsel has argued that the interest of the Series A Members is more like debt than equity, but the Court finds no competent evidence that this is so.

-15-

whether a party that is an artificial entity other than a corporation can be considered a 'citizen' of a State, but the quite separate question whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy." 494 U.S. at 191. Defendant TWC has made no showing, as would be required by the holding in *Navarro*, that Hare & Co. is the trustee of an express business trust of which BAS is (or was) a beneficiary. TWC therefore obtains no benefit from *Navarro*, which was based narrowly upon trust principles.[4] Under the record made by TWC, *Navarro* is simply irrelevant to the issue of the citizenship of TWC for diversity purposes.

TWC is not itself a jural person for purposes of diversity of citizenship. Ultimately, TWC has failed to carry its burden to show that none of its members was, at the time of removal, a citizen of the State of North Carolina. Neither the Amended Notice of Removal nor the Tohvert affidavits demonstrate a search of business records sufficient to establish that no member of TWC was a North Carolina citizen on March 31, 2008. TWC alleges that Plaintiff County of Durham is a North Carolina citizen. Accordingly, for reasons set forth

---

[4] TWC appears to argue that any entity holding property "for the benefit" of another is automatically, by the mere fact of being a holder or nominee, entitled to treatment as an independent entity for purposes of diversity under *Navarro*. The Court does not agree with this assertion, as *Navarro* was anchored in well established trust law regarding "active trustees"who "for more than 150 years" have been permitted to sue in their own right, without regard to the citizenship of trustee beneficiaries. In this case, TWC has not shown that "Hare & Co. for the benefit of Banc of America Securities LLC" establishes a legal relationship between "active trustees" and BAS. To extent *Navarro* beyond the boundaries it was explicitly given in *Carden* would be to violate the principles laid down in *Carden*.

-16-

above, this Court cannot find that TWC has adequately shown subject matter jurisdiction in this Court based upon diversity of citizenship, and this case should be remanded to the Superior Court of the County of Durham. *See* 28 U.S.C. § 1447(c).

## CONCLUSION

For the reasons set forth above, **IT IS THEREFORE RECOMMENDED** that Plaintiff's motion to remand (Docket No. 19) be granted and that this action be remanded to the North Carolina General Court of Justice, Superior Court Division, County of Durham. **IT IS FURTHER RECOMMENDED** that no attorney's fees be assessed or awarded with regard to the motion to remand.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: September 16, 2008